FILED

APR - 7 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>ALEXANDER DAVID FAUDOA,<br><br>Defendant. | Case No.: 17MJ8205-PCL<br><br>**FINDINGS OF FACT AND ORDER OF DETENTION** |

In accordance with Title 18 U.S.C. § 3142(f) of the Bail Reform Act of 1984 (18 U.S.C. § 3141, et seq.), a detention hearing was held on March 21, 2017, to determine whether defendant ALEXANDER DAVID FAUDOA, should be held in custody pending trial on the grounds that he is a flight risk. Assistant U.S. Attorney Lara A. Stingley appeared on behalf of the United States. Attorney Danielle Iredale specially appeared for attorney Douglas C. Brown on behalf of the Defendant.

Based on the evidence proffered by the United States and the Defendant, the Pretrial Services report, and the criminal complaint issued against the Defendant on March 21, 2017, by this Court, the Court concludes that the following facts establish by a preponderance of the evidence that no condition or combination of conditions required will reasonably assure the appearance of the Defendant.

I

FINDINGS OF FACT

A. Nature and Circumstances of the Offense Charged (18 U.S.C. §3142(g)(1))

1. The Defendant is charged in Criminal Complaint No. 17MJ8205-PCL with Transportation of Illegal Aliens and Aiding and Abetting, in violation of Title 8 U.S.C., Sections 1324(a)(1)(A)(ii) and (v)(II).

Therefore, probable cause exits to believe the Defendant committed the charged offenses.

B. Weight of the Evidence Against the Defendant (18 U.S.C. § 3142(g)(2)):

On December 29, 2016, FBI Special Agents asked CW to contact FAUDOA on a consensually-monitored telephone[1]. During the telephone call, FAUDOA told CW that he was staying in Mexicali, Mexico because he left his wallet, identification, and other belongings in a stash house that was recently identified and taken down by Border Patrol.[2] FAUDOA asked CW if he could come to El Centro that evening to transport aliens because FAUDOA could not reach his usual drivers since he was in Mexicali. FAUDOA told CW that the pickup area would be near the second bridge[3] and that he would be watching from

---

[1] The FBI consensually recorded and monitored all of the conversations between CW and FAUDOA on December 29, 2016.

[2] FBI agents believe FAUDOA is referring to the residence at 1056 El Dorado Avenue, El Centro, California, the location where an alien smuggling event occurred on December 27, 2016, during which Border Patrol agents arrested five principals and 14 aliens who were being harbored at the location. After the arrests on December 27, 2016, agents obtained search warrants for the 15 cellular telephones that were seized. During the investigation, agents determined that some of the defendants arrested on December 27, 2016, had communications with FAUDOA in November and December 2016, including text messages with FAUDOA regarding payment amounts for the smuggling fees; photographs of aliens being held inside load houses; photographs of vehicles that would be used to transport aliens; receipts of payments FAUDOA made to one of his load drivers; and text messages with screen shots of sheets of papers containing lists of names, which is believed to be names of aliens FAUDOA organized to be smuggled into the United States and transported within the Southern District of California and beyond.

[3] The location is located near the intersection of Highway 98 and Interstate 8 between El Centro, California and Yuma, Arizona.

2

"up top.[4]" FBI and Border Patrol agents subsequently conducted physical surveillance of CW as he/she drove towards the pickup location. During surveillance, the FBI monitored consensually-recorded telephone calls between FAUDOA and CW, wherein FAUDOA instructed CW to be at the pickup location at 6:00 p.m. because the aliens would be ready between 6:30 p.m. and 7:00 p.m.

On December 29, 2016, at approximately 6:07 p.m., FAUDOA instructed CW to drive between the first and second bridges and to stop when he saw a bunch of little lights near the side of the road. At approximately 6:10 p.m., FAUDOA placed CW on a three-way telephone call with "Nino" to pinpoint CW's precise location. The telephone call lasted approximately nine minutes and consisted of multiple, unsuccessful attempts by FAUDOA and Nino to guide CW to a location where the aliens were hiding near a red antenna. After much confusion, Nino and FAUDOA changed the location to be near the yellow lights in alignment with what FAUDOA referred to as "the Research Center."[5] At the end of the telephone call with CW, FAUDOA asked Nino how many aliens there were, and Nino replied "five."

At approximately 6:35 p.m., FAUDOA called CW and placed him on another three-way telephone call, this time with an individual known as "Jose." During the telephone call, Jose told FAUDOA that the aliens were hiding in front of a canal gate near the "Research Center." FAUDOA instructed CW to look for orange lights on the side of the road and to pull over when he saw them because they were waiting. CW told FAUDOA he was approaching behind a semi-truck. FAUDOA then asked Jose to ask Nino if he could see a semi-truck, to which Nino replied, "yes." FAUDOA instructed CW to turn on his high beams; however, once again, the pick-up was unsuccessful. After further confusion, FAUDOA instructed CW to leave the area and return to the rest area for further instruction

---

[4] FBI agents believe FAUDOA is referring to a vantage point in Mexico where he would watch CW pick up the aliens on the U.S. side near the border fence.

[5] Agents determined that the Brock Research Center was in the vicinity of the pickup location where FAUDOA directed CW to pick up the aliens.

3

because a Border Patrol unit was nearby. Jose told FAUDOA they would watch the Border Patrol unit because the aliens had not been spotted.

At approximately 6:54 p.m., FAUDOA called CW and instructed him not to go to the rest stop and to turn around and head back towards the aliens. FAUDOA asked CW to look around the area on the way back to ensure no Border Patrol units were around. FAUDOA again instructed CW to look for the "Research Center" because the aliens would be aligned with it. At approximately 7:03 p.m., CW called FAUDOA and advised that he was heading towards the "Research Center." At that time, FAUDOA again placed Nino on a three-way call with CW. Nino advised FAUDOA that a Border Patrol unit was near the fence. FAUDOA asked Nino if the Border Patrol unit would see CW make the pickup, to which Nino replied, "no." CW advised FAUDOA that he was less than one minute away, to which FAUDOA tells Nino to have the people watch for CW's high beams. Shortly thereafter, CW heard Nino telling someone to get up before advising FAUDOA that CW picked up the aliens. FAUDOA then requested that CW put one of the aliens on the telephone and FAUDOA asked the alien if everything was okay before confirming with CW had picked up all five aliens. FAUDOA instructed the alien to have everyone duck down to avoid being seen.

At approximately 7:17 p.m., CW informed FAUDOA that he was 19 miles from El Centro. FAUDOA asked if everything was good and whether CW saw anything behind him. FAUDOA informed CW that he would pay him $400 for transporting the five aliens in his vehicle and that he could transport more the following night. At approximately 7:34 p.m., FAUDOA instructed CW to drive the five aliens to Calexico and advised he would text the address soon. At approximately 7:47 p.m., FAUDOA texted CW the address 1049 Horizon Street.

The FBI and Border Patrol physical surveillance units followed CW from the pickup area to 1049 Horizon Street in Calexico, California. When CW's vehicle pulled in front of the residence, the surveillance units conducted a traffic stop and observed the five aliens attempting to conceal themselves by laying sideways in the back seat and on the floors of

4

CW's vehicle. Agents determined that the five aliens were natives of Mexico and Guatemala without legal permission to enter the United States, and thereafter placed the aliens under arrest and transported them to the Border Patrol El Centro Station for processing.

At approximately 8:07 p.m., after the arrests, FAUDOA sent CW a text that read, "WTF is going on?"

Material witnesses Benito Carrera-Ortega, Pedro Ortega-Gonzalez, Sebastian Corona-Esquivel stated they are natives of the Republic of Mexico without any immigration documents which would permit them to enter or remain in the United States legally. Material witnesses Elder Osmaro Lopez-Alvarez and Johnny Batres-Delgado stated they are citizens of Guatemala without any immigration documents which would permit them to enter or remain in the United States legally. The material witnesses further stated that they were paying between $3,000 and $7,500 USD to be smuggled into the United States.

C. History and Characteristics of the Defendant (18 U.S.C. § 3142(g)(3)):

1. Defendant is a United States Citizen.

2. Defendant resides within the Southern District of California.

3. Defendant's wife and two children reside in California.

4. Defendant has substantial ties to Mexico, which permitted Defendant to abscond from law enforcement undetected for approximately three months, during which time Defendant continued to participate in additional criminal activity.

5. Defendant served in the Army for approximately 4 ½ years and was discharged under other than Honorable conditions in 2014.

6. Defendant has been unemployed for one year.

7. Defendant has a misdemeanor conviction for Driving Under the Influence (.08%) from 2014 for which he received a three-year probationary sentence (suspended).

8. Defendant graduated from the APS Diversion Program in 2013, but received three violations during the program.

D. <u>Nature and Seriousness of Danger Posed by Release (18 U.S.C. § 3142(g)(4))</u>:

Other than the Defendant being charged with the crime of alien smuggling, there is nothing to suggest that the release of the Defendant would pose a danger to any person or the community.

## II
## REASONS FOR DETENTION

1. There is probable cause to believe that the Defendant committed the offense charged in Criminal Complaint No. 17MJ8205-PCL with Transportation of Illegal Aliens and Aiding and Abetting, in violation of Title 8 U.S.C., Sections 1324(a)(1)(A)(ii)(v)(II).

2. While in Mexico from on or about December 27, 2016 and the date of the Defendant's arrest on March 16, 2017, law enforcement officials in Mexico and the United States made efforts to locate the Defendant and to effectuate his arrest. In the three-month period of time the Defendant was in Mexico, law enforcement efforts to determine his whereabouts yielded negative results. Therefore, if the Defendant were released on bond and fled to Mexico, there is no reason to believe that law enforcement would be able to locate the Defendant.

3. Based on the charges the Defendant is facing and the possibility of facing a five-year mandatory minimum, the Defendant has a strong motive to flee.

## III
## ORDER

IT IS HEREBY ORDERED that the Defendant be detained pending trial in this matter.

IT IS FURTHER ORDERED that the Defendant be committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held

in custody pending appeal. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

While in custody, upon order of a court of the United States or upon the request of an attorney for the United States, the person in charge of the correctional facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding or any other appearance stipulated to by defense and government counsel.

THIS ORDER IS ENTERED WITHOUT PREJUDICE.

IT IS SO ORDERED.

4/7/2017

HON. PETER C. LEWIS
UNITED STATES MAGISTRATE JUDGE

Prepared by:

ALANA W. Robinson
Acting United States Attorney

/s/ Lara A. Stingely
LARA A. STINGLEY
Assistant U. S. Attorney

cc: Douglas C. Brown
Attorney for Alexander Faudoa